UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT GORDON PAYNE,

    Plaintiff,

v.

SYDNIE ALVIAR, KATHY SHERWOOD,
and ARIELLE JONES,

    Defendants.
_____/

Case No. 1:23-cv-524

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Scott Gordon Payne ("Payne"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). This lawsuit involves Payne's medical treatment at the Muskegon Correctional Facility (MCF). Payne sued Nurse Practitioner (NP) Sydnie Alviar[1], Registered Nurse (RN) Kathy Sherwood and RN Arielle Jones. This matter is now before the Court on defendant NP Alviar's combined motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and alternately for summary judgment based on failure to exhaust administrative remedies (ECF No. 18) and defendant RN Sherwood's motion for summary judgment on the basis of exhaustion (ECF No. 24).

    **I.**    **Payne's allegations**

This lawsuit involves alleged lack of treatment after off-site surgery. By way of background, Payne had his gallbladder surgically removed. However, numerous gallstones remained after a separate bile duct surgery. Payne returned from the hospital on January 24, 2023.

---

[1] The Court notes that defendant's motion refers to "Sydnie Alvair" while the medical records refer to "Sydnie Alviar" (see ECF No. 1-9. PageID.39-41).

1

Compl. (ECF No. 1, PageID.3). Payne's discharge documents stated that he was "Okay for discharge with Norco for pain control as needed". *Id*. The gist of Payne's lawsuit is that defendants refused to implement the surgeon's postoperative plan to treat the pain related to passing his gallstones which remained after the surgery. *Id*. Rather, defendants allowed him to suffer in pain for nine days, from January 24, 2023 until February 2, 2023. *Id*.

Payne set forth the following allegations. At approximately 8:00 a.m. on January 24, 2023, Officer Bundy notified health service by phone that Payne was experiencing severe pain, but health service employees refused to speak with him. *Id*. The next morning, Officer Stewart notified health services by phone on at least three occasions that Payne was passing gallstones and was in extreme pain. *Id*. at PageID.4. Finally, at around noon, defendant RN Jones agreed to speak to Payne by phone. *Id*. Payne told Jones that he was covered in sweat and was experiencing "off the chart levels of pain" from passing gallstones. *Id*. Payne suggested that Jones call McLaren Hospital and confirm the pain treatment plan. *Id*. Jones responded by yelling that Payne had not been prescribed pain medication and needed to buy Tylenol from the prison store. *Id*.

However, RN Jones did follow up by reviewing the discharge documentation. *Id*. Jones then reported her findings to NP Alviar, who reviewed the same discharge documents the previous day. *Id*. "[N]o new orders were given" by NP Alviar and "plaintiff was encouraged to try Tylenol for his off the chart levels of pain." *Id*.

On January 30, 2023, defendant RN Sherwood conducted an in-person assessment of Payne in response to a January 28, 2023, kite complaining of pain and expressing a need to have his dressings changed. *Id*. at PageID.5.

On January 31, 2023, Payne kited that he had been in extreme pain the previous night and that he had lost his balance and fallen that morning. *Id*. Payne asked RN Sherwood to

look at the one-inch gash on the top of his head, but Sherwood responded by asking what that had to do with his gallbladder removal. *Id*.  RN Sherwood also told Payne that she had had her gallbladder removed and that it had not been that painful. *Id*.  Plaintiff explained that he was also passing gallstones and did not have any pain medication. *Id*.  Plaintiff asked Sherwood to confirm the surgeon's pain medication plan. *Id*. at PageID.6.  Sherwood explained that there was no order for pain medication, but merely a recommendation and that NP Alviar was not ordering any pain medications. *Id*.

NP Alviar saw Payne on February 7, 2023, "long after his 9 days of passing gallstones." *Id*. at PageID.7.  Alviar instructed plaintiff to buy Tylenol from the prison store. *Id*.

Plaintiff contends that defendants violated his rights under the Eighth Amendment and seeks compensatory damages and declaratory relief. *Id*. at PageID.10.

## II. Service of the complaint

The Court reviewed the complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A and 42 U.S.C. § 1997e(c), to determine whether it was frivolous, malicious, failed to state a claim upon which relief could be granted or sought monetary relief against a defendant that was immune from such relief.  *See* Order (ECF No. 9).  After screening, the Court ordered service of the complaint.  *Id*.

## III. NP Alviar's motion to dismiss

The Court's CMO advised the parties that the complaint was sufficient to state a cause of action against defendants and discouraged subsequent motions to dismiss:

> Rule 12(b)(6) Motions. The Court has conducted an initial review of the complaint pursuant to 28 U.S.C. §1915(e), §1915A and 42 U.S.C. § 1997e(c), to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant that is immune from such relief. Upon initial review, the Court concludes that the complaint is not subject to dismissal for any of the reasons listed above. In reaching this conclusion, the court

3

> has determined that the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). Accordingly, the Court discourages the filing of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

CMO (ECF No. 10, PageID.73). Nevertheless, NP Alviar subsequently moved to dismiss Payne's Eighth Amendment claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (ECF No. 18).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft*, 556 U.S. at 678 (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008). Finally, *pro se* complaints "are held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted).

Payne seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the

Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted). "[T]his care qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or 'so grossly inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).

5

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

The relevant time period for Payne's claim is from January 24, 2023 through February 2, 2023. During this time period, Payne alleged: that NP Alviar reviewed his hospital discharge documents on January 24, 2023; that RN Jones reported findings to Alviar on January 25th; that "no new orders were given" by Alviar; and, that on January 31, 2023, RN Sherwood explained to Payne that there was no order for pain medication, but merely a recommendation and that NP Alviar was not ordering any pain medications. After the relevant time period, NP Alviar examined Payne and instructed him to buy Tylenol.

The discharge documentation stated in pertinent part:

> Abdominal pain was well controlled, [patient] demonstrated ability to tolerate oral intake without nausea or vomiting, able to ambulate and essentially returned to baseline function. At this time patient is stable for discharge. Recommended outpatient follow-up with primary surgeon Dr. St. Hilaire within 1 to 2 weeks. *Okay for discharge with Norco for pain control as needed*.

6

Medical Records (ECF No. 1-2, PageID.15) (emphasis added).  Payne later alleged that he had significant pain.  NP Alviar notes that plaintiff submitted kites on January 28, 2023 and January 31, 2023, complaining of pain "from a five to eight on a scale of one to ten" and "in excess of 10", respectively. NP Alviar's Brief  (ECF No. 18, PageID.102-103).  NP Alviar points out that the "Norco for pain control as needed" was not prescribed, but only recommended by the discharging physician.  *See id*. at PageID.102-103.

The language used in the discharge document contemplated that it was "okay" to discharge Payne with access to Norco "as needed" for pain control.  One could read Payne's discharge as conditioned on the availability of Norco.  Payne has alleged that NP Alviar reviewed the discharge document and did not order Norco even after Payne submitted kites regarding his extreme pain related to passing gallstones.  Construing the *pro se* complaint broadly and in the light most favorable to Payne, the Court concludes, as it did on initial screening, that the complaint alleged an Eighth Amendment claim against NP Alviar.  Accordingly, NP Alviar's motion to dismiss should be denied.[2]

### IV. NP Alviar's motion for summary judgment

### A. Legal standard

NP Alviar also moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[2] In reaching this determination, the Court notes that NP Alviar's motion to dismiss relies heavily on the record created by Payne's attached exhibits.  While the Court may consider these exhibits in addressing a motion to dismiss, Alviar's motion reads more like a motion for summary judgment than a motion to dismiss.  In this regard, Payne's response includes an argument that "There are genuine issues of material facts that preclude summary judgment for defendant Sidnie Alviar's complete denial of surgeon's recommended pain treatment plan."  Payne's Response (ECF No. 26, PageID.165).

Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### C. Discussion

NP Alviar contends that plaintiff failed to exhaust a grievance related to this lawsuit.[3] Specifically, Alviar contends that Payne failed to name her in a grievance. Alviar refers to Grievance MCF-23-01-0091-12z ("91") (ECF No. 1-4, PageID.27) which Payne attached to his complaint. *See* NP Alviar's Brief at PageID.105. Grievance 91 was dated January 26, 2023, and listed an incident date of January 25, 2023. On the grievance form, Payne stated that he did not attempt to resolve the issue prior to filing the grievance and provided the following explanation:

> On 1/24/23 Officer Bundy called healthcare. Healthcare did not respond. On 1/25/23 Officer Stewart called healthcare at least three times, on the third time I spoke with Ms. Jones. Ms. Jones alleged the hospital did not prescribe pain mediation, and the McLarren medical file contained no such prescription.

Grievance 91. In the body of the grievance, Payne named only one person, Ms. Jones (defendant RN Jones) stating:

> On or about 1/20/23 I underwent surgery of my Bile-Duct. On 1/21/23 they surgically removed my Gallbladder. Ms. Jones claimed that the hospital did not prescribe pain medication, therefore I would not receive any. However, at 1:00 a.m. on 1/24/23, the L.R.F. Brooks P.A. that cleared me for re-entry; showed me the McLarren hospital medical file with the pain medication prescription. I am experiencing off the chart levels of pain. I would like to be treated with the pain medication that was prescribed for me. Healthcare's assertion that the hospital operated on my Bile duct and surgically removed my Gallbladder without prescribing pain medication simply defies logic. It would seem that curiosity would compel healthcare to inquire, as to why McLarren did not prescribe pain medication.

Grievance 91.

---

[3] The Court notes that NP Alviar's brief refers to an individual who is not a party to this lawsuit. The heading for § III.B. states "Plaintiff Failed to File Any Grievance Against Defendant and has Failed to Exhaust His Administrative Remedies with Respect to His Claims Against Defendant Herro". NP Alviar's Brief at PageID.104).

10

In his response to the motion, Payne contends that he did not need to name NP Alviar in the grievance. Payne states that he mentioned NP Alviar in the Step II appeal ("Defendant's Counsel concedes to Plaintiff mentioning Alviar in the Step II"). *See* Payne's Response (ECF No. 26, PageID.178). Payne also argues that "Defendant Alviar was given fair notice as 'The Medical Provider' and this was recognized by the State in their merits denial at the Step III and the Step I Response". *Id.* at PageID.179. Payne relies on *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) ("As we have noted, the PLRA's exhaustion requirement is designed to give prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced.") and *Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010) ("We see no benefit to enforcing a procedural bar that the Department of Corrections did not.").

Courts have rejected attempts by MDOC prisoners to circumvent the requirement that the prisoner name each person grieved in the Step I grievance. As this Court recently explained,

> In recommending that this Court grant Defendants' motion [for summary judgment based on the plaintiff's failure to exhaust administrative remedies], the Magistrate Judge determined that the record demonstrates that Plaintiff failed to name Defendants Bush, Heinritz, McKee, Dirschell, Nylander, and Histed in a properly exhausted grievance asserting that they were involved in denying him religious meals free of soy or soy by-products (R&R, ECF No. 85 at PageID.523). The Magistrate Judge rejected Plaintiff's argument that a different result was required by the Sixth Circuit's decision in *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), explaining that Plaintiff failed to name these Defendants in a Step I grievance involving his soy or soy by-product issues and also failed to show that the Michigan Department of Corrections waived its own requirement by considering the merits of a grievance where Plaintiff failed to name any prison official (*id.* at PageID.524).
>
> In his objections, Plaintiff argues that the Magistrate Judge erred in his application of the Reed-Bey decision (Pl. Obj., ECF No. 86 at PageID.528-530). Plaintiff emphasizes that he "submitted a grievance relative to the soy/by-product issue naming a single member of the Board responsible for the compilation of a menu/meal which comports to prisoner diets and related religious beliefs" (*id.* at PageID.529). According to Plaintiff, "naming a single prison official (in a

11

grievance) who sit's [sic] on a Board would have (similar to Reed-Bey) thus have been clear to prison officials when they addressed the merits of the grievance that they were waiving their own procedural requirement to include the name of those involved in the grievance" (*id.*).

In *Reed-Bey*, 603 F.3d at 325, the Sixth Circuit held that "[w]hen prison officials decline to enforce their own procedural requirements," such as the requirement to identify the names of those involved in the issue being grieved, and instead "opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." As the Magistrate Judge pointed out, the Sixth Circuit subsequently held that *Reed-Bey* "does not stretch" to meet facts where an inmate named a specific individual in a grievance but not later defendants to the lawsuit, reasoning that the defendants could not "be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit" (R&R, ECF No. 85 at PageID.524, quoting *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019)). *See also Dykes-Bey v. Finco*, No. 20-1624, 2021 WL 2767584, at *2 (6th Cir. Feb. 2, 2021) (declining to apply *Reed-Bey* where inmate named a specific individual in the grievance but not those later named as defendants to the lawsuit); *Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149, at *3 (6th Cir. Sept. 8, 2022) (same). Plaintiff merely reiterates his argument to the contrary but fails to demonstrate any error in the Magistrate Judge's analysis or conclusion. Accordingly, this Court adopts the Magistrate Judge's Report and Recommendation as the Opinion of this Court.

*Mitchell v. Schroeder*, No. 2:21-cv-109, 2024 WL 182554 at *1 (W.D. Mich. Jan. 17, 2024).

Here, Payne directed his Step I grievance at RN Jones because Jones "claimed that the hospital did not prescribe pain medication, therefore I would not receive any." Payne did not name NP Alviar as required by the policy directive. *See* Policy Directive 03.02.130 ¶ S ("Dates, times, places and names of all those involved in the issue being grieved are to be included."). For this reason, Payne failed to properly exhaust his Eighth Amendment claim against NP Alviar. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, NP Alviar's motion for summary judgment should be granted.

### V.     RN Sherwood's motion for summary judgment

RN Sherwood also moved for summary judgment for lack of exhaustion because she was not named in Grievance 91. *See* RN Sherwood's Brief (ECF No. 25). For the same

reasons as stated in § IV, *supra*, Payne failed to properly exhaust a grievance against Sherwood. Furthermore, Grievance 91 could not apply to RN Sherwood. Payne filed Grievance 91 on January 26, 2023, four days *before* he interacted with Sherwood on January 30 and 31, 2023. *See* Compl. at PageID.5-6. Accordingly, RN Sherwood's motion for summary judgment should be granted.

### VI. Recommendation

For these reasons, I respectfully recommend that defendant NP Alviar's motion to dismiss (ECF No. 18) be **DENIED**.

I further recommend that defendant NP Alviar's motion for summary judgment on the basis of exhaustion (ECF No. 18) and that defendant RN Sherwood's motion for summary judgment on the basis of exhaustion (ECF No. 24) be **GRANTED**.

I further recommend that defendants NP Alviar and RN Sherwood be **DISMISSED**.

Dated: January 23, 2024

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).