UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT GORDON PAYNE,

    Plaintiff,

v.

SYDNIE ALVIAR, et al.,

    Defendants.
_____/

Case No. 1:23-cv-524

Hon. Hala Y. Jarbou

## **OPINION**

This is a *pro se* civil rights action brought under 42 U.S.C. § 1983 by Scott Gordon Payne, an inmate in the custody of the Michigan Department of Corrections ("MDOC"). Payne alleges that he received insufficient medical care after undergoing bile duct and gallbladder removal surgery. He brings his claims against three nurses employed by the MDOC, Nurse Practitioner ("NP") Sydnie Alviar, Registered Nurse ("RN") Kathy Sherwood, and RN Arielle Jones. Alviar filed a motion to dismiss for failure to state a claim (ECF No. 18) under Rule 12(b)(6) of the Federal Rules of Civil Procedure; in the alternative, she asks the Court to grant summary judgment in her favor because Payne failed to exhaust his available administrative remedies prior to filing suit as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Sherwood filed a motion for summary judgment (ECF No. 24), arguing that Payne did not exhaust his claims against her. Before the Court is the magistrate judge's report and recommendation ("R&R") recommending the Court deny Alviar's motion to dismiss and grant both Defendants' motions for summary judgment. (R&R, ECF No. 47.) For the reasons herein, the Court will adopt the R&R in part and reject it in part.

# I. BACKGROUND

## A. Payne's Allegations

Payne is an inmate at Muskegon Correctional Facility (MCF). His allegations stem from complications relating to two surgeries he underwent at an off-site hospital. First, Payne's gallbladder was removed. He then underwent surgery to remove gallstones from his bile duct, but that operation was not entirely successful, and numerous gallstones remained in his system. (Compl., ECF No. 1, PageID.3.) Since not all the gallstones were removed during surgery, Payne would have to "pass" the remaining ones on his own. (*Id.*) Payne was released from the hospital on January 24, 2023, with instructions from his surgeon that he was "okay for discharge with Norco ([a pain killer] consisting of Hydrocodone and acetaminophen) for pain control as needed." (*Id.*) According to Payne, he was told by his doctors that he would pass the gallstones naturally, but there would be associated pain.

On January 24, 2023, the morning of his return to prison, Defendant Alviar reviewed Payne's hospital discharge documents and decided to not order pain medication for him. (*Id.*) That same day, Payne notified the on-duty corrections officer in his unit that he was experiencing "serious" pain. (*Id.*) The officer notified Health Services of his condition by phone, but the responding nurse refused to speak with Payne. (*Id.*) The next day, Payne was still in serious discomfort, so he again asked to speak with Health Services. After three calls by the officer, Payne was able to reach Defendant Jones by phone. (*Id.*, PageID.4.) Payne told Jones that he was covered in sweat and "experiencing off the charts levels of pain" from passing gallstones. (*Id.*) Jones responded that Payne was not prescribed any pain medication and that he should buy Tylenol from the prison commissary. (*Id.*)

Five days later on January 30, 2023, Defendant Sherwood conducted an in-person assessment of Payne in response to a kite he sent two days earlier complaining of pain related to

2

passing gallstones. (*Id.*, PageID.5.) Payne told Sherwood that he was passing gallstones and that his pain was currently fluctuating between a five and an eight on a ten-point scale, and up to ten the night before. (*Id.*) He showed her a gash on his head that he sustained when he fell into a latch on his wall locker while doubled over in pain. (*Id.*) Sherwood allegedly responded that the gash had nothing to do with the purpose of his kite, which only mentioned the gallstones, and further questioned whether the levels of pain he claimed to be experiencing were plausible. (*Id.*) Payne asked Sherwood to contact the hospital that conducted his surgery to confirm that he was prescribed a pain reliever upon discharge. Sherwood told him that there was no order for pain medication, only a recommendation, and that the prison was not ordering any pain medication for him. (*Id.*, PageID.6.)

### B. Payne's Grievance History

#### 1. Step I Grievance

Before meeting with Sherwood on January 27, 2023, Payne filed a Step I prison grievance complaining that he had been denied the pain medication the hospital had recommended and that he was continuing to experience "off the chart levels of pain." (Step I Grievance, ECF No. 25-3, PageID.162.) In the grievance, Payne mentioned only Defendant Jones by name, asserting that he spoke with her and that she told him that the hospital had not prescribed pain medication. He also questioned "Healthcare's assertion that the hospital operated [on him] without prescribing pain medication[.]" (*Id.*)

In a Step I grievance response dated January 31, 2023, the respondent stated that the "MDOC Medical Provider" (i.e., Alviar) had reviewed Jones's medical records from the hospital, which offered "conflicting notes" about whether Jones required any pain medication following surgery. (Step I Response, ECF No. 25-3, PageID.163.) The response also contended that, after Jones complained about pain in a kite to healthcare services on January 30, 2023, he was seen by

3

nursing staff the same day, but he became angry and left before the nurse (i.e., Sherwood) could complete an examination. (*Id.*)

### 2. Step II Grievance

Payne appealed to Step II of the grievance process. In his Step II grievance, Payne expressly named Sherwood and Alviar, in addition to Jones. (Step II Grievance, ECF No. 25-3, PageID.158, 160.)  He contended that, if Alviar did not understand the hospital's recommendations, she should have contacted the hospital. (*Id.*, PageID.158.) He asserted that Jones was aware of his "off the chart levels of pain," but she hung up on him during his call with her. (*Id.*, PageID.160.) And he contended that he met with Sherwood on January 30, 2023, showed her the gash on his head, and complained that his pain was so intense it had caused him to lose balance. (*Id.*) She purportedly dismissed his concerns, telling him that his gallbladder had been removed and that "it wasn't that painful." (*Id.*) She also told him that the hospital had not prescribed him Norco and that Alviar had decided that he would not receive pain medication. (*Id.*) Payne disputed Sherwood's contention that he abruptly walked away from his visit with her; in fact, at the time of the visit, he was having trouble walking due to his pain. (*Id.*, PageID.161.)

In a Step II response dated March 31, 2023, prison officials comprehensively addressed Payne's concern that he had not received adequate care for his postsurgical pain. The response discussed his hospital records, as well as the treatment decisions by prison healthcare staff from the date of Payne's arrival back at the prison until February 7, 2023. (Step II Response, ECF No. 25-3, PageID.159.) In other words, it discussed Alviar's review of Payne's hospital records upon his return to the prison, Jones's phone call with Payne on March 25, 2023, and Sherwood's visit with him on January 30, 2023. It also discussed a follow-up visit that Payne had with a medical provider on February 7, 2023, at which the provider determined that Payne was "tolerating his post-operative pain in a manner that negated the need for narcotic analgesics." (*Id.*) It

4

concluded that, although records indicated that Payne's need for pain control had been "addressed in various ways by multiple Health Care staff, it appears that there may have been some degree of miscommunication between grievant, nursing staff, and the medical provider." (*Id.*)

### 3. Step III Grievance

Payne appealed to Step III of the grievance process, arguing that he had been completely denied his surgeon's recommended treatment plan for passing gallstones. (Step III Grievance, ECF No. 25-3, PageID.158.) He contended that he complained to "nurses" about "off the chart levels of pain" and the nurses acknowledged his surgeon's treatment plan but they refused to implement it. (*Id.*) Instead, they allowed him to "suffer for nine days while he passed gallstones." (*Id.*) Prison officials denied the appeal, upholding the Step I and Step II responses and asserting that "[t]he Medical Provider is the medical authority and is responsible to manage the treatment plan[.]" (Step III Response, ECF No. 25-3, PageID.157.)

### C. Procedural History

Payne filed suit on May 18, 2023, alleging a complete denial of his surgeon's recommended pain treatment plan. Defendant Alviar moved to dismiss the action for failure to state a claim. And both Sherwood and Alviar moved for summary judgment on the basis that Payne failed to exhaust his administrative remedies as required by the PLRA prior to filing suit.

The magistrate judge concluded that the Court should deny Alviar's motion to dismiss because Plaintiff states a plausible claim against her. However, the magistrate judge concluded that the Court should grant Alviar and Sherwood's motions for summary judgment because Payne failed to exhaust his administrative remedies against them. Specifically, Payne failed to name them in his Step I grievance. (R&R 12-13.) Indeed, he filed his Step I grievance before meeting with Sherwood. (*Id.* at 13.) Payne objects to that decision.

5

## II. LEGAL STANDARD

### A. Review of Objections

Under Rule 72 of the Federal Rules of Civil Procedure,

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249 (citing *First Nat'l Bank of Ariz v. City Serve. Co.*, 391 U.S. 253, 288-89 (1961)). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III. ANALYSIS

### A. Objections

As a preliminary matter, the Court agrees with the magistrate judge that Payne's complaint states a plausible Eighth Amendment claim against Defendant Alviar. The magistrate judge twice reviewed the complaint under the Rule 12(b)(6) standard. He did so at the initial screening stage

6

and again in the R&R.  (R&R 3-4.)  Since Alviar does not object to this portion of the R&R, the Court will approve it.

Payne objects to the magistrate judge's conclusion that he failed to exhaust his administrative remedies through the prison grievance process by not naming Sherwood and Alviar in his Step I grievance. (Pl.'s Objs. 2, ECF No. 48.) Specifically, he argues that the MDOC waived its procedural requirement to name all parties by responding to the Step I grievance on the merits and addressing the actions of both Sherwood and Alviar, rather than focusing solely on Jones.  (*Id*.)

**B. Exhaustion**

The PLRA requires inmates to exhaust their administrative remedies before filing suit. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).  "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review, and, if necessary, correct the grievance 'on the merits' in the first instance."  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90).

Under MDOC Policy Directive 03.02.130, prisoners must follow a multistep process to exhaust their administrative remedies.  First, a prisoner must attempt to resolve their issue with the staff member within two days.  (MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019), ECF No. 25-2.)  If that fails, the prisoner must file a Step I grievance within five business days after the attempt to resolve the issue.  (*Id*. ¶¶ Q, S.)  The Policy Directive provides the following instructions for grievances:

> [t]he issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e. who, what, when, where, why, how).  Dates, times, places *and names* of all those involved in the issue being grieved are to be included.

7

(*Id.* ¶ S (emphasis added).)  The prisoner must send the Step I grievance to the appropriate coordinator.  (*Id.* ¶ W.)  If the prisoner does not receive a response or is dissatisfied with the response he does receive, he must submit a Step II grievance to the Grievance Coordinator.  (*Id.* ¶ DD.)  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance to the Grievance and Appeals Section.  (*Id.* ¶ HH.)

A failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden of proving.  *See Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  Although non-jurisdictional, "exhaustion under the PLRA is analogous to other threshold issues of judicial determination 'that courts must address to determine whether litigation is being conducted in the right forum at the right time.'"  *Id.* at 678 (quoting *Dillon v. Rodgers*, 596 F.3d 265, 272 (5th Cir. 2010)).

It is not disputed that Payne failed to name either Sherwood or Alviar in his Step I grievance.  Instead, he mentioned only Nurse Jones and "Healthcare."  Indeed, he submitted his Step I grievance before his encounter with Nurse Sherwood.  The Court notes that the MDOC's policy regarding grievances does not clearly require prisoners to name all relevant prison officials in the Step I grievance, rather than at some point in the grievance process.  *See Coleman v. Rich*, No. 16-1263, 2016 WL 9650985, at *2 (6th Cir. Dec. 20, 2016) (noting that the MDOC's policy is "unclear as to whether a prisoner must name each defendant in his first grievance or before the conclusion of the grievance process").  The naming requirement in MDOC Policy Directive 03.02.130 ¶ S applies to grievances generally, not to Step I grievances specifically.  The Court acknowledges, however, that many courts have interpreted this policy to require that all officials involved be named in the Step I grievance.  *See, e.g.*, *Williams v. Corizon*, No. 21-12534, 2023

WL 2711571, at *2 (E.D. Mich. Mar. 30, 2023); *Burley v. Mich. Dep't of Corrs.*, No. 16-cv-10712, 2016 WL 11259277, at *4 (E.D. Mich. Nov. 30, 2016) (citing cases).

Even so, "[t]he point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison error that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey*, 603 F.3d at 324 (quoting *Woodford*, 548 U.S. at 94-95).  Thus, where a Step I grievance names some individuals and not others who become defendants to a lawsuit, some courts have held that such a grievance can fulfill the exhaustion requirement if it gave "the MDOC sufficient information to identify the individual or individuals involved[.]" *Gardiner v. Corizon Health, Inc.*, No. 2:21-cv-167, 2023 WL 1794118, at *2 (W.D. Mich. Feb. 7, 2023); *accord Frisby v. Cobar*, No. 2:22-cv-00087, 2023 WL 4872567, at *5 (W.D. Mich. May 8, 2023) (recognizing that it may be possible to exhaust a claim against individuals named for the first time in a Step II grievance if the Step I grievance put the prison on notice of the issue requiring investigation); *Blau v. Covert*, 2:18-CV-127, 2020 WL 5554873, at *2 (W.D. Mich. Sept. 17, 2020) (declining to dismiss two nurses not named in the Step I grievance because "the MDOC had the opportunity to address Plaintiff's claims that [the unnamed nurses] were providing inadequate medical care"); *Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) ("[T]he Court may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved.").  After all, "promot[ing] early notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Assuming that the MDOC's policy required Payne to name all Defendants in his Step I grievance, Payne argues that, by addressing the conduct of Alviar and Sherwood on the merits in their responses, prison officials waived that requirement. The Court agrees.

As explained in *Reed-Bey*, the procedural requirements of the exhaustion process can be waived. There, the plaintiff failed to name any of the defendants to a subsequent civil suit in his initial prison grievance. Nevertheless, the Court of Appeals found that prison officials had waived that procedural requirement by responding to his grievance on its merits. *Reed-Bey*, 603 F.3d at 326. Because the prison officials had already received "the first shot at correcting their own mistakes," and because the grievance review produced a record available for a court to review, the Court of Appeals saw no reason to give "merit-based grievance denials undeserved insulation from federal judicial review[.]" *Id.* at 326. Indeed, barring a prisoner's claims that had already been reviewed on the merits during the prison grievance process "would do nothing to further any of the goals of proper exhaustion under the PLRA[.]" *Id.* In short, the Court of Appeals saw "no benefit to enforcing a procedural bar that the Department of Corrections did not." *Id.*

Payne argues that the rationale in *Reed-Bey* applies to this case as well. The magistrate judge disagreed because this case is not identical to *Reed-Bey*. Unlike that case, Payne named at least one defendant in his initial grievance (Jones), but not others (Sherwood and Alviar). Some courts have declined to find waiver when the prisoner identifies one or more individuals in a Step I grievance and does not name others until later in the grievance process or until a complaint is filed in a lawsuit against them. *See, e.g.*, *Hill v. Buchanan*, No. 21-1673, 2022 WL 16580149, at *3 (6th Cir. Sept. 8, 2022); *Dykes-Bey v. Finco*, No. 20-1624, 2021 WL 2767584, at *2 (6th Cir. Feb. 2, 2021); *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019). The outcome of those cases makes sense where "prison officials would naturally assume

10

that [the plaintiff] complied with the requirement to name those involved, and defendants cannot be said to have waived the exhaustion defense when they had no way of knowing that they would be the subject of a later lawsuit." *Id.*

But that outcome makes less sense here, where the plaintiff grieved an *ongoing* need for pain treatment, complained about "healthcare" staff generally, named the only staff member with whom he had had any contact at that point (Jones), and then prison officials responded to his grievance on the merits by discussing other individuals who were involved in decisions about that care. In other words, by their response, prison officials indicated that they were aware of the nature of Payne's concern (inadequate treatment for postsurgical pain) and that this concern implicated conduct by officials who were not named in his initial grievance. Instead of simply addressing the conduct by Jones, they discussed the conduct of Alviar and Sherwood as well. In these circumstances, it is difficult to say that Sherwood and Alviar had no way of knowing that they would be the subject of a later lawsuit.

But even if it was not clear at the start of the grievance process that Payne's complaint extended to Alviar and Sherwood, he made that clear in his Step II grievance, contending that neither Jones, nor Alviar, nor Sherwood had adequately treated his postsurgical pain.[1] Rather than focus solely on Jones because Payne had not named Alviar or Sherwood in his initial grievance, prison officials responded by reviewing and explaining the conduct of all three Defendants. By doing so, they waived the requirement that Payne name all three officials in his Step I grievance. As in *Reed-Bey*, barring Payne's claims against Alviar and Sherwood would do nothing to further

---

[1] Sherwood objects that the Step II grievance was not specific enough to put her on notice of what she did wrong. The Court disagrees; the thrust of Payne's grievance was that she did not adequately address his pain. A grievance is not subject to the same pleading requirements as a complaint. "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation[.]" *Jones*, 549 U.S. at 218 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

11

the goals of the exhaustion process. Prison officials took the opportunity to review whether Alviar and Sherwood adequately addressed Payne's need for pain care, and in doing so, they created an administrative record for the Court.

Similarly, at Step III, Payne complained about "nurses" who acknowledged his surgeon's treatment plan but then refused to implement it and instead allowed him to suffer for nine days after returning to the prison. Although he did not mention nurses Jones, Alviar, or Sherwood by name, he raised the same medical concern at issue in his Step I and Step II grievances, and the time period he referenced encompassed the dates on which Defendants were involved in his care. Once again, rather than focus on his interaction with Jones, prison officials addressed the merits of his larger concern about inadequate treatment of his postsurgical pain, noting that the "Medical Provider" (Alviar) was responsible for his treatment plan and that his disagreement with that plan was not a denial of care. In short, Payne received a response on the merits at all three steps of the grievance process, and all those responses addressed the same concern regarding his lack of adequate pain treatment by Defendants. This is not a case where Defendants would have no way of knowing that they would be the subject of a later lawsuit.

Although the Court of Appeals declined to find waiver in *Hill*, *Dykes-Bey*, and *Brown*—where the prisoner-plaintiffs named at least one official but not others in the Step I grievance—that court implied that it *might* have found waiver if the plaintiff had named the additional defendants at some point in the grievance process, *see Dykes-Bey*, 2021 WL 2767584, at *2 (noting that the plaintiff did not name the additional defendants "during *any* step of the grievance process" (emphasis added)), or if the grievance responses had discussed the defendants who were not named, *see Hill*, 2022 WL 16580149, at *3 (noting that prison officials did not address the conduct

12

by the unnamed defendants in response to the prisoner's grievances); *Brown*, 2019 WL 5436159, at *3 (same).  Both of those distinguishing circumstances are present here.

In summary, the prison officials responding to Payne's grievances were clearly aware that he was complaining about inadequate postsurgical pain care.  They were also aware of the involvement by Alviar and Sherwood in that care, giving them an opportunity to address that conduct.  In addition, Payne expressly identified Alviar and Sherwood by name in his Step II grievance (and implicitly identified them at Step III), giving notice that they might be the subject of a later lawsuit.  Rather than enforce a requirement to name all officials at Step I, prison officials responded by reviewing and discussing each Defendant's conduct.  Enforcing that requirement at this stage would not further the purposes of exhaustion because prison officials had several opportunities to review Defendants' conduct before Payne filed his lawsuit, and they did review that conduct.  Accordingly, the Court is not persuaded that Payne failed to exhaust his administrative remedies as to his claims against Alviar and Sherwood.

## IV. CONCLUSION

For the reasons stated above, the Court declines to adopt the portion of the R&R that recommends granting summary judgment in favor of Defendants Alviar and Sherwood for failure to exhaust administrative remedies.  Instead, the Court will deny Alviar and Sherwood's respective motions for summary judgment.  The Court agrees with the magistrate judge that Payne has stated a plausible claim for relief against Defendant Alviar and will therefore adopt the portion of the R&R that concerns Alviar's motion to dismiss for failure to state a claim.  The Court will deny that motion.

The Court will enter an order consistent with this Opinion.

Dated: March 27, 2024 /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE