UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT GORDON PAYNE,

      Plaintiff,

v.

SYDNIE ALVIAR, KATHY SHERWOOD,
and ARIELLE JONES,

      Defendants.
_____/

Case No. 1:23-cv-524

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Scott Gordon Payne ("Payne"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). This lawsuit involves Payne's medical treatment at the Muskegon Correctional Facility (MCF). Payne sued Nurse Practitioner (NP) Sydnie Alviar, Registered Nurse (RN) Kathy Sherwood and RN Arielle Jones. This matter is now before the Court on RN Jones' "Motion to dismiss" (ECF No. 39), which appears on the docket sheet as a combined "Motion to dismiss, or in the alternative, for summary judgment."

    **I.**    **Payne's allegations**

Payne had his gallbladder surgically removed. Some gallstones remained after a separate bile duct surgery. Payne returned from the hospital on January 24, 2023. Compl. (ECF No. 1, PageID.3). The claim against RN Jones involves whether she followed the instructions in Payne's discharge documents, which stated in pertinent part:

> Abdominal pain was well controlled, [patient] demonstrated ability to tolerate oral
> intake without nausea or vomiting, able to ambulate and essentially returned to

1

> baseline function. At this time patient is stable for discharge. Recommended outpatient follow-up with primary surgeon Dr. St. Hilaire within 1 to 2 weeks. Okay for discharge with Norco for pain control as needed.

Medical Records (ECF No. 1-2, PageID.15). The gist of Payne's claim is that RN Jones violated his Eighth Amendment rights when she refused to implement the surgeon's postoperative plan to treat the pain related to passing the gallstones and allowed him to suffer for nine days, from January 24, 2023, until February 2, 2023. Compl. at PageID.3.

Payne's claim against RN Jones involves an interaction on January 25, 2023. At approximately 8:00 a.m. on January 24, 2023, non-party Officer Bundy notified health service by phone that Payne was experiencing severe pain. *Id*. Health service employees refused to speak with him. *Id*. The next morning, non-party Officer Stewart notified health services by phone on at least three occasions that Payne was passing gallstones and in extreme pain. *Id*. at PageID.4. Around noon, RN Jones spoke with Payne by phone. *Id*. At that time, Payne told Jones that he was covered in sweat and experiencing "off the chart levels of pain" from passing gallstones. *Id*. Payne suggested that Jones call McLaren Hospital and confirm the pain treatment plan. *Id*. Jones responded by yelling that Payne had not been prescribed pain medication and needed to buy Tylenol from the prison store. *Id*.

Later, RN Jones reviewed the discharge documentation and reported her findings to NP Alviar (who had reviewed the same discharge documents the previous day). *Id*. "[N]o new orders were given" by NP Alviar and "plaintiff was encouraged to try Tylenol for his off the chart levels of pain." *Id*. This interaction appears in Payne's medical record:

> Inmate states that he was prescribed Norco when being discharged from McLaren. Inmate was informed that the MP [medical provider] reviewed discharge paperwork and no medication [sic] were ordered. Inmate states he was told by the MP at McLaren and showed discharge paperwork that states he was prescribed pain medication. This author then pulled the discharge paperwork and in the MP provider notes it states "okay with patient being discharged on Norco". This author

2

> then told inmate that the MP would be consulted again regarding medications. NP Alviar was consulted and no new orders were given and inmate was encouraged to trial Tylenol and Motrin for pain management. Inmate then hung up the phone .

*See* Administrative Note (ECF No. 1-5, PageID.29)

Payne had additional interactions with RN Sherwood and NP Alviar from January 30th through February 7th. *Id*. at PageID.5-10. RN Sherwood explained that there was no order for pain medication, but merely a recommendation and that NP Alviar was not ordering any pain medications. *Id*. at PageID.6. NP Alviar saw Payne on February 7th, "long after his 9 days of passing gallstones." *Id*. at PageID.7. Alviar instructed plaintiff to buy Tylenol from the prison store. *Id*.

Payne contends that RN Jones was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because she failed to provide him with "the prescribed (recommended) pain medication from McLaren Hospital" and refused to "call McLaren and confirm pain [sic] treatment plan." *See id*. at PageID.4. Payne seeks compensatory damages and declaratory relief. *Id*. at PageID.10.

## II.    RN Jones' dispositive motion

While RN Jones' motion is entitled "Motion to Dismiss" (ECF No. 39, PageID.300-302), it does not cite the court rule authorizing the motion. The supporting brief cites the legal standard for a motion for summary judgment pursuant to Fed. R. Civ. P. 56, noting that "discovery is closed," that "the facts are not meaningfully or materially disputed", and that "[t]he facts are primarily taken from Plaintiff's Complaint and the exhibits thereto." *See* Brief (ECF No. 39, PageID.303, 309). Accordingly, the Court will review Jones' motion as seeking summary

judgment for failure to exhaust administrative remedies and for failure to establish an Eighth Amendment claim against her.[1]

### III.    Motion for summary judgment

### A.    Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

---

[1] Even if RN Jones had presented a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the motion would be disfavored because the Court previously found that Payne's complaint contained enough facts to state a claim to relief that is plausible on its face. *See* Case Management Order (ECF No. 10, PageID.73). In addition, the Court notes that discovery closed on November 13, 2023 and that RN Jones filed her motion for summary judgment based upon that deadline.  *Id*. at at PageID.74.  Discovery as to the other defendants has been stayed.  *See* Order (ECF No. 60).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Here, Payne relies on the documents filed in the court record. These include his verified compliant[2], which has the same force and effect as an affidavit for purposes of responding to RN Jones' motion for summary judgment. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

### B.  Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

---

[2] *See* Affidavit/Declaration (PageID.8-9).

5

1.     **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

2.     **Discussion**

Payne's complaint included a copy of Grievance MCF-23-01-0091-12z ("91") (ECF No. 1-4, PageID.27).[3] For her part, RN Jones attached Payne's MDOC Prisoner Step III

---

[3] Defendant Jones' counsel e-filed copies of Payne's attachments as her Exhibit A (ECF No. 39-2). This resulted in each page of the exhibit having two different and overlapping Page.ID numbers. Counsel is reminded that previously filed documents cannot be attached as exhibits. *See* W.D. Mich. LCivR 5.7(d)(vii)(B) ("Filers must not attach as an exhibit any pleading or other paper already on file with the court, but shall refer to that document by the ECF No. identified thereon, found in the document header displayed at the top of the electronically filed document.").

Grievance Report (ECF No. 39-5), which included a complete copy of that grievance and Payne's appeals (PageID.383-389).

Grievance 91 listed an incident date of January 25, 2023. Payne stated the following attempt to resolve the grievance:

> On 1/24/23 Officer Bundy called healthcare. Healthcare did not respond. On 1/25/23 Officer Stewart called healthcare at least three times, on the third time I spoke with Ms. Jones [defendant RN Jones]. Ms. Jones alleged the hospital did not prescribe pain medication, and the McLarren [sic] medical file contained no such prescription.

Grievance 91 (PageID.388). Payne directed the grievance at RN Jones:

> On or about 1/20/23 I underwent surgery of my Bile-Duct. On 1/21/23 they surgically removed my Gallbladder. Ms. Jones claimed that the hospital did not prescribe pain medication, therefore I would not receive any. However, at 1:00 a.m. on 1/24/23, the L.R.F. Brooks P.A. that cleared me for re-entry; showed me the McLarren hospital medical file with the pain medication prescription. I am experiencing <u>off the chart levels of pain</u>. I would like to be treated with the pain medication that was prescribed for me. Healthcare's assertion that the hospital operated on my Bile duct and surgically removed my Gallbladder without prescribing pain medication simply defies logic. It would seem that curiosity would compel healthcare to inquire, as to why McLarren did not prescribe pain medication.

*Id*. (emphasis in original).

The MDOC denied the grievance at Step I. Payne appealed, and the grievance was denied at Steps II and III (PageID.383-387). Based on this record, Payne properly exhausted his Eighth Amendment claim against Jones. Accordingly, Jones' motion for summary judgment on the basis of exhaustion should be denied.

**C.     Eighth Amendment claim**

Payne seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem,*

7

*Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, Payne contends that RN Jones was deliberately indifferent to his serious medical in needs in violation of the Eighth Amendment because she failed to provide him with "the prescribed (recommended) pain medication from McLaren Hospital" and refused to "call McLaren and confirm pain [sic] treatment plan." *See* Compl. at PageID.4. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id*. at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. at 9. "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385

(6th Cir. 2004) (internal quotation marks omitted). "[T]his care qualifies as 'cruel and unusual' only if it is 'so grossly incompetent' or 'so grossly inadequate' as to 'shock the conscience' or 'be intolerable to fundamental fairness.'" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id*. at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Stated another way, the plaintiff must prove that each defendant acted with a "sufficiently culpable state of mind, equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40) (internal quotation marks omitted).

Jones contends that she did not act with deliberate indifference to Payne's post-operative pain because she is a registered nurse and cannot prescribe opioid medication.[4] *See* Brief at PageID.309; RN License (ECF No. 39-3); M.C.L. § 333.17211a (authorizing only an "advanced practice registered nurse" to prescribe a controlled substance as a delegated act of a physician). *See also, Hall v. Raja*, No. CIV.A. 09-10933, 2012 WL 3236635 at *3 (July 18, 2012), *R&R adopted sub nom. Hall v. Sharpley*, 2012 WL 3234866 (E.D. Mich. Aug. 7, 2012) (as a registered nurse, defendant did not have the authority to prescribe pain medication for the plaintiff prisoner);

---

[4] "Norco is a combination of acetaminophen and hydrocodone, an opioid pain reliever." *Lazarus v. Abilittif*, No. 1:12-cv-1279, 2013 WL 1500658 at *1, fn. 2  (W.D. Mich. April 10, 2013).

*Flentall v. Lange*, No. 1:10-cv-161, 2011 WL 6937612 at *3 (Dec. 1, 2011), *R&R approved*, 2012 WL 19421 (W.D. Mich. Jan. 3, 2012) (as a registered nurse, defendant "has no authority to independently prescribe controlled substances and must follow the orders of a prescribing physician").

In his response, Payne contends that Jones knew he would continue to suffer from pain and could have called the hospital to confirm the treatment plan or "inform Chief (MP) Doctor Michael Tomaszczyk." Payne's Response (ECF No. 40, PageID.394-395). With respect to contacting the hospital, Payne cites *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir. 1991), a case in which a jail nurse (Wiscomb) allegedly refused to give the inmate plaintiff his pain medication prescribed at another jail's infirmary. As the Sixth Circuit explained:

> Although it is not clear from the record whether plaintiff's discharge instructions of December 26, 1987 from the Jackson jail infirmary had been transferred to the Oakland County Jail, the record indicates that on January 4, 1988, it took one phone call to the Jackson jail infirmary to confirm that motrin had been prescribed for pain on December 26, 1987 for the next two weeks. We do not believe one phone call to the Jackson jail infirmary to confirm plaintiff's pain medication is too difficult a task for a nurse to perform or beyond her scope of authority. . .

*Boretti*, 930 F.2d at 1154.

Here, unlike the situation in *Boretti*, RN Jones had the discharge instructions from the hospital. Those instructions did not include a prescription for Norco. Under these circumstances, it was reasonable for Jones to contact Payne's medical provider, NP Alviar, to address the discharge instructions and to confirm an appropriate treatment plan for Payne's post-surgery recovery. As discussed, NP Alviar was consulted, no new orders were given, and Payne was encouraged to try Tylenol and Motrin for pain management. In short, there is no evidence to support Payne's claim that RN Jones was deliberately indifferent to his serious medical needs.

Accordingly, RN Jones should be granted summary judgment on Payne's Eighth Amendment claim.

### IV. Recommendation

For these reasons, I respectfully recommend that defendant RN Jones' motion for summary judgment (ECF No. 39) be **DENIED** with respect to lack of exhaustion and **GRANTED** with respect to the Eighth Amendment claim.

I further recommend that Jones be **dismissed** from this action.

Dated: July 19, 2024                     /s/ Ray Kent
                                         RAY KENT
                                         United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).